# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| **TERESA K. ABRAMOWITZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 2:13CV23NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.[1]** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Teresa Abramowitz (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 17). Defendant has filed a brief in support of the Answer. (Doc. 27). Plaintiff filed a Reply. (Doc. 31). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 32).

## I.
## PROCEDURAL HISTORY

On June 9, 2010, Plaintiff filed her applications for DIB and SSI, with a disability onset date of August 28, 2009. (Tr. 13, 139-50). Plaintiff's applications were denied and she

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

requested a hearing before an Administrative Law Judge (ALJ). (Tr. 88-96). After a hearing, by decision dated December 9, 2011, the ALJ found Plaintiff not disabled. (Tr. 16-29). Plaintiff filed a request for review with the Appeals Council, which denied Plaintiff's request on January 17, 2013. (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these

impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  See id.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC).  See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").  Even if a court finds that there is a

preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial

evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).   "While the claimant has the burden of proving that the disability results from a medically determinable

physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly

discuss each <u>Polaski</u> factor." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1072 (8th Cir. 2004). <u>See</u> <u>also</u> <u>Steed</u>, 524 F.3d at 876 (citing <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. <u>See</u> <u>id.</u> Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. <u>See</u> <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v.</u> <u>Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. <u>See</u> <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy</u> <u>v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. <u>See</u> <u>Goff</u>, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is

appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was 46 years old at the time of the hearing, has a bachelor's degree and is a registered nurse. She testified that she could not work because she could not get to work on time and because she had anxiety. She also testified that she had problems "getting things together"; she could not find things that she needed to have; and she had panic attacks or generalized anxiety; (Tr. 63-70). Although Plaintiff previously had thyroid problems, her attorney said that he wanted to focus on Plaintiff's mental illness. (Tr. 67).

The ALJ found Plaintiff met the insured status requirements through March 31, 2015; she had not engaged in substantial gainful activity since her alleged onset date, August 28, 2009; she had no severe physical impairments; she had severe mental impairments of attention deficit-hyperactivity disorder (ADHD), bipolar disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD); and Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ further found Plaintiff had the RFC to perform the full range of work at all exertional levels with the following non-

exertional limitations: she was limited to unskilled work which did not require extended concentration or attention, and she needed to work in jobs which did not involve constant or intense social interaction and required no more than occasional interaction with coworkers, supervisors, and the public. The ALJ concluded that Plaintiff could not perform her past relevant work as a general duty nurse or nurse aid; there was other work in the national economy existing in significant numbers which a person of Plaintiff's age, and with her education and RFC could perform; and, therefore, Plaintiff was not disabled.

Plaintiff argues the ALJ's decision is not supported by substantial evidence because "all of the evidence supports her claim for disability"; the ALJ ignored the evidence and substituted her own speculations; the evidence establishes that Plaintiff could not hold down a job; the ALJ gave improper weight to Plaintiff's home schooling her children; the ALJ made up her mind prior to the hearing; and the ALJ gave improper weight to the opinion of Jeffrey C. Harden, D.O., and to the opinion of Donna Reissner, M.A., L.C.S.W.

A.      **Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including the severity of Plaintiff's mental impairments and her testimony regarding her inability to work. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot

substitute its judgment for that of the ALJ.  See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  See Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff responded well to conservative treatment.  (Tr. 23).  See Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (conditions which can be

controlled by treatment are not disabling); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (if an impairment can be controlled by treatment, it cannot be considered disabling). In this regard, Plaintiff testified that, at the time of the hearing, she was taking Lithium and Abilify, and that she was feeling "pretty good"; she did not feel like she was going to explode and "that was [her] real worry [] working with children . . . that [she] was going to kill their little spirits exploding." (Tr. 55). Plaintiff further testified that she felt she had made progress in the last year or two on the medications prescribed by Dr. Harden. (Tr. 56). Dr. Harden reported in June 2009 that Plaintiff reported that she believed the Lithium was beneficial by "brightening her spirits," elevating her motivation, "improving her duration/quality of sleep," and making her less irritable. (Tr. 287). In September 2009, Dr. Harden reported that Plaintiff's symptoms had decreased with Prozac. (Tr. 286). In March 2011, Dr. Harden reported that Abilify had calmed Plaintiff's mood and decreased her irritability. (Tr. 332). Also, June 2011 notes reflect that Plaintiff was making progress in managing her mental health. (Tr. 425).

Second, as considered by the ALJ, Plaintiff home schooled her three children since 2009, as soon as she stopped nursing, and held that this suggested she left work for reasons not related to her allegedly disabling impairments. (Tr. 24). Plaintiff did deny that she quit work to home school her children and testified that it was coincidental that her dismissal from her nursing job coincided with her intention of home schooling her children; she planned to home school her children before she stopped nursing; she had not planned to quit nursing to home school her children; she had thought she could both work as a nurse and home school her children, as she only slept about two hours a day; and she thought she would work nights, sleep in the morning, and then do some home schooling. (Tr. 47-48). The ALJ concluded that the correlation between

Plaintiff's stopping work and her intention to start home schooling her children was "impossible to ignore and decrease[d] the credibility of [Plaintiff's] allegations." (Tr. 24). Despite Plaintiff's argument to the contrary, the ALJ was entitled to consider this correlation as leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. See Medhaug, 578 F.3d at 816-17; Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).

Third, the ALJ considered Plaintiff's daily activities. (Tr. 23). In particular, as discussed above, Plaintiff home schooled her children; she did this for three to four hours a day. She also reported or testified that she drove a car; drove her son to therapy; she spent about an hour a day on a computer; she tried to get caught up with laundry and dishes; she visited family and friends; she helped her children and husband care for pets including two dogs, one gerbil, one guinea pig, and fish; she cleaned, did laundry, vacuumed, mopped, swept, and took care of a small flower garden; she shopped 2-3 times a week, sometimes for 1-2 hours, and sometimes for 3-5 hours; and she went outside "almost daily," drove a car; went for short walks, and went to church two (2) times a week. Plaintiff reported, in regard to visiting family and friends, that she visited family three (3) times a week, and, at the hearing, in response to the ALJ's asking her how often she saw friends and her mother, Plaintiff testified that she saw her friend, Sue, about every two weeks and she saw her mother about every week. Plaintiff also testified she spent the whole week before the hearing with her mother "because she was sick and need[ed] somebody to take care of her." (Tr. 50, 57-58, 61, 214-15). Also, Plaintiff's friend, Nancy Knotts, reported that Plaintiff took care of her children, went to various appointments, cleaned her house, assisted with her three children's meals, helped her children with caring for pets, did laundry and dishes on a daily basis, and shopped in stores weekly for thirty minutes to one hour. Ms. Knotts also

reported that Plaintiff prepared easy complete meals, and that she did this on a daily basis, and that Plaintiff socialized on a weekly basis or as events came up.  (Tr. 194-99).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints.  See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987).  Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations."  Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001).  "Inconsistencies between [a claimant's] subjective complaints and [her] activities diminish [her] credibility."  Goff, 421 F.3d at 792.  See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Fourth, the ALJ considered that Plaintiff had worked as a staff RN, despite the fact that she was being treated for bipolar disorder, adult ADHD, and possible depression.  (Tr. 22).  Significantly, Plaintiff had treatment for bipolar disorder, adult ADHD, and possible depression, dating back to November 20, 2008, and she reported that her anxiety went back to the first grade and that she had significant problems with anxiety since she was 18 years old.  (Tr. 418, 424).

Additionally, she had reported earnings of $83,099.97, in 2008, the last full calendar year she was employed. (Tr. 159). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years.").

Fifth, the ALJ considered Plaintiff's treatment history, and considered Plaintiff had conservative treatment for her allegedly disabling impairments. (Tr. 23). Plaintiff, in fact, denied ever being in a psychiatric hospital, and, as discussed above, received only medication and counseling to treat her allegedly disabling conditions. (Tr. 56). Conservative treatment and no surgery are consistent with discrediting a claimant's allegation of disabling pain. See Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006) (affirming ALJ's credibility determination based in part on claimant's doctors having recommended exercise and medication but never surgery); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

Sixth, the ALJ considered that Plaintiff testified that she was noncompliant with prescribed medications in the evening and that Plaintiff cancelled or failed to show up for doctors' appointments on a number of occasions. (Tr. 23, 285, 425). See Eichelberger, 390 F.3d

at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain).

Seventh, the court notes that in January and March 2009, and in April and July 2010, counseling focused on management of life and home-related stresses; in April 2009, it focused on parenting strategies; in May 2011, it focused on choices Plaintiff was making; and, in June 2011, it focused on Plaintiff's spiritual health, in addition to focusing on the progress she was making in managing her mental health. (Tr. 425). To the extent Plaintiff depression was situational, situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (finding depression which was situational is not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations).

Eighth, upon considering Plaintiff's credibility, the ALJ did consider third-party reports, including that of Plaintiff's friend, Ms. Knotts, and Plaintiff's mother, Elizabeth Kramer. Plaintiff suggests the ALJ did not give sufficient weight to the reports of Ms. Knotts and Ms. Kramer. The court notes that neither person had standing as a medical professional, and, to the extent their reporting echoed Plaintiff's subjective allegations regarding her limitations, the same evidence to which the ALJ referred in discrediting Plaintiff would apply to her discrediting these third parties. See Buckner v. Astrue, 646 F.3d 549, 559-60 (8th Cir. 2011) (same evidence that ALJ referred to in discrediting plaintiff's claims also discredited his girlfriend's statements).

In conclusion, the court finds that substantial evidence supports the ALJ's credibility determination and that it is consistent with the Regulations and case law.

**B.    Dr. Harden's Opinion:**

The ALJ requested Plaintiff had an independent consultative evaluation, and the DDS sent Plaintiff to Dr. Harden, who was Plaintiff's treating doctor commencing December 2007, through the date of the consultative examination.  Pursuant to his consultative evaluation, Dr. Harden reported, in September 2011, that Plaintiff would have difficulty sustaining employment. He also reported in a Medical Source Statement of Ability to Do Work-Related Activities (Mental), that she had marked limitations in her ability to manage her own money, be punctual, concentrate, and potential to be distracted by others, and that it was likely that Plaintiff would miss three or more work days a month due to her extreme moods.  (Tr. 416, 420).  Previously, Dr. Harden stated in a handwritten note to Plaintiff, dated February 8, 2011, that "[t]his letter is provided per your request to confirm my opinion that you are unable to maintain meaningful employment because of your ongoing inattention and impulsivity. . . .  I anticipate that you will be unable to responsibly manage employment responsibilities for the next six months."  (Tr. 348).

As Plaintiff's treating doctor, Dr. Harden's opinion should have been given controlling weight if it was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with other substantial evidence in Plaintiff's case record. See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)).  See also Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000).  While, as Plaintiff's treating doctor, Dr. Harden's opinion should have been given great weight, this was true only if his opinion was based on sufficient medical

data. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion).

First, upon determining that Dr. Harden's opinion should not have been given controlling weight, the ALJ properly considered that Dr. Harden's opinion was inconsistent with his treatment notes. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment). As discussed above in regard to Plaintiff's credibility, Dr. Harden repeatedly reported that Plaintiff's did well on her medication and that the medication helped. Also, Dr. Harden reported in August 2008, that Plaintiff was doing "OK [] overall but managing a lot of home and work stress." (Tr. 290). Also, in August 2008, Dr. Harden reported that Plaintiff's movement/gait was steady; her thought process was logical; her mood was "content modulated"; her energy, sleep, and overall pleasure were "OK"; her motivation was variable; she was oriented; and she was negative for panic attacks, hallucinations, and somatic complaints. (Tr. 290). Dr. Harden reported in June 2009, that Plaintiff's sleep and motivation were "good"; her concentration and energy were "OK"; she was negative for nightmares,

panic/anxiety, obsessions, suicide/violence, hallucinations, and somatic complaints; and she was oriented. (Tr. 287). In September 2009, Dr. Harden reported that Plaintiff was cooperative; her thought process was logical; her concentration was mildly decreased; her energy was tired because she was overworked; she was negative for nightmares, panic attacks, and hallucinations/delusions; her overall pleasure was OK; and she was oriented. He did note on this date that Plaintiff reported obsessions with cleaning. (Tr. 286). More recently, in March 2011, Dr. Harden reported that Plaintiff was doing well overall; her thought process was logical; her mood was "frustrated-modulated"; her appetite was "voracious"; she fell asleep and slept "good"; she was usually rested; her motivation was "poor"; her concentration was "fairly good -- - less in evening"; her energy was "so-so"; she had bad dreams; she had anxiety spells "couple per wk"; as for obsessions, she rearranged things unnecessarily "1-2 hrs/day"; she had "all over muscle aches"; her overall pleasure fluctuated with stress; she was oriented; and Plaintiff was doing well "overall." (Tr. 332). Then, in June 2011, Dr. Harden reported that Plaintiff was doing "fairly well"; she was oriented; her thought process was logical; her mood was "mainly happy"; her appetite was good; her sleep was good and she was rested; her motivation was better; her concentration was good; her energy was "OK"; she was negative for nightmares, panic/anxiety, mood swings, and hallucinations; and, in regard to obsessions, she worried. (Tr. 323).

Notably, in the Medical Source Statement of Ability to Do Work-Related Activities (Mental), completed the same day as his evaluation, September 14, 2011, Dr. Harden reported that Plaintiff had no restrictions in regard to understanding, remembering, and carrying out simple instructions, and in understanding and remembering complex instructions; and she had only mild limitations in her ability to make judgments on simple work-related decisions, carry

out complex instructions, and make judgments on complex instructions. Further, Dr. Harden reported that Plaintiff had only moderate limitations in her ability to appropriately interact with the public, supervisors, and co-workers, although she had marked limitations in regard to responding appropriately to usual work situations and changes in a routine work setting. (Tr. 415-16). Also, in a mental status examination conducted pursuant to the DDS referral, Dr. Harden reported that Plaintiff "*presented in a timely fashion with casual attire and satisfactory grooming*" (emphasis added); Plaintiff's thought process was logical, although she showed a repetitive nervous mannerism of constantly scratching her leg; she was fully oriented to person, place and time; her concentration was such that she could immediately reverse her own zip code; her immediate recall was such that she was able to accurately recollect three facts following a five minute delay; her remote recall was such that she could recall the past five United States presidents; she readily abstractly interpreted a simple proverb correctly; her insight into her own problems was appropriate; and her judgment to hypothetical social situations was appropriate. (Tr. 419-20). The court finds, therefore, to the extent Dr. Harden opined that Plaintiff was unable to work, that substantial evidence supports the ALJ's determination that Dr. Harden's records are inconsistent with such a conclusion.

Second, the ALJ properly considered that Dr. Harden's opinion was inconsistent with other evidence of record. See Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole."

Third, to the extent Dr. Harden simply stated that Plaintiff could not sustain employment without explaining why, conclusory opinions of treating doctors can be discounted if contradicted by other objective medical evidence. See Travis v. Astrue, 477 F.3d 1037, 1041

(8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."); Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan, 239 F.3d at 961; Social Security Ruling 96-2p, 1996 WL 374188 (July 2, 1996).

Fourth, much of what Dr. Harden stated in his September 14, 2011 evaluation was based on Plaintiff's self-reporting of her symptoms. For example, in regard to Plaintiff's ADHD, Dr. Harden stated that Plaintiff "identified herself as having all nine symptoms of inattention positive and seven of nine symptoms of hyperactivity as positive. All of her ADHD positive symptoms had their origin in her childhood . . . and have continued to the present." (Tr. 420). Dr. Harden also reported that Plaintiff "identified herself as experiencing depressed moods that last for four weeks or longer"; "[s]he described herself as having manic episodes that last[ed] for approximately two weeks at a time that involve a predominant mood of irritability accompanied by diminished sleep, poor judgment, an excessive number of ideas in her mind, and increased physical activity"; "[h]er bipolar mood swings began in her 20's and got progressively worse through her 40's." (Tr. 420). See McCoy v. Astrue, 648 F.3d 605, 617 (ALJ properly discounted doctor's opinion where evaluation was based, at least in part, on claimant's self-reported symptoms; insofar as claimant's self-reported symptoms were found to be less than credible, doctor's report was rendered less credible).

Fifth, Dr. Harden reported that during the past year, Plaintiff had achieved a Global Assessment of Functioning (GAF) score of 60, which would have placed her in the moderate range of functioning, although at the time of the evaluation it was 50, which was on the borderline between serious to moderate.[2] Although "the Commissioner has declined to endorse

---

[2] GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual

the GAF scale for 'use in the Social Security and SSI disability programs,' ... GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning." Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010) (quoting 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000), and citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the RFC's accuracy."). See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work).

Sixth, as required by the Regulations, the ALJ gave good reasons for not giving Dr. Harden's opinion controlling weight. See SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

Seventh, to the extent Dr. Harden suggested that Plaintiff could return to work after six months, to be disabled under the Act a claimant's disability must last for twelve months. See 20 C.F.R. § 414.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

---

of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] ... reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.'" (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)).

Eighth, as considered by the ALJ, Dr. Harden's treatment notes evidence gaps in Plaintiff's treatment. (Tr. 25). A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000); Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996); Polaski, 739 F.2d at 1322.

Ninth, the ALJ did give some weight to Dr. Harden's opinion, as she included non-exertional limitations in Plaintiff's RFC, limiting her to work which did not require extended concentration or attention, and to work which was not stressful, and which did not involve constant or intense social interaction and no more than occasional interaction with co-workers, supervisors, and the public. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (limitations imposed by ALJ as reflected in claimant's RFC demonstrated that ALJ gave some credit to treating physicians' opinions); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").

In conclusion, the court finds that the ALJ gave proper weight to Dr. Harden's opinion; the ALJ's decision, in this regard, is supported by substantial evidence and it is consistent with the Regulations and case law.

## C.     Opinion of Donna Peissner, M.A., L.C.S.W.:

Ms. Peissner, who was a licensed clinical social worker, reported that Plaintiff was unable to maintain employment. (Tr. 384). Plaintiff claims that the ALJ failed to consider and give proper weight to Ms. Peissner's opinion.

First, Ms. Peissner is not an acceptable medical source for establishing the presence of a medically determinable impairment. <u>See</u> Social Security Ruling 06-03p, 71 Fed. Reg. at 45,594 ("[O]nly 'acceptable medical sources' can give us medical opinions."). Social workers and therapists are not physicians, psychologists, or other acceptable medical sources as defined by the Regulations. <u>See</u> 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources); <u>Raney v. Barnhart</u>, 396 F.3d 1007, 1010 (8th Cir. 2005) ("A therapist is not an 'acceptable medical source' to establish 'a medically determinable impairment.'").

Second, Ms. Peissner routinely assigned Plaintiff GAF scores of 50. (Tr. 26, 384, 387, 390, 394). <u>See</u> <u>Halverson</u>, 600 F.3d at 930-31. Third, Ms. Peissner reported, in August 2011, that Plaintiff was oriented; her memory was intact; her intellect was average; her reasoning, insight, and impulse control were fair; and her perception was realistic. (Tr. 394). <u>See</u> <u>Davidson v. Astrue</u>, 578 F.3d 838, 842 (8th Cir.2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."). Fourth, the ALJ considered that Ms. Peissner treated Plaintiff for a brief period, less than two months. (Tr. 26). Indeed, the record includes Ms. Peissner's treatment notes, indicating she treated Plaintiff in July and August 2010. (Tr. 381-96). <u>See</u> 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i) ("Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion."). Fifth, the ALJ considered that Ms. Peissner's opinion was not consistent with the record as a whole. <u>See</u> <u>Travis</u>, 477 F.3d at 1041 ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). Sixth, the ALJ incorporated mental limitations in her RFC determination. <u>See</u>

Choate, 457 F.3d at 869-70; Ellis, 392 F.3d at 994. Seventh, the ALJ gave good reasons for not giving controlling weight to Ms. Peissner's opinion. See SSR 96-2p; 20 C.F.R. §§ 404.1527 and 416.927. In conclusion, the court finds that the ALJ gave proper weight to Ms. Peissner's opinion.

**D.     Plaintiff's RFC and Her Ability to Perform Work Other Than Her Past Work:**

As stated above, the ALJ found Plaintiff had the RFC to perform the full range of work at all exertional levels, but with specified non-exertional limitations. Given the court's findings above regarding Plaintiff's credibility and the weight given to Dr. Harden's and Ms. Peissner's opinions, the court further finds that the ALJ's RFC determination is based on substantial evidence in the record as a whole. The ALJ posed a hypothetical to the VE which included the RFC which the ALJ assigned to Plaintiff, and which described a person of Plaintiff's age, education and work experience. An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."); Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir. 2005) (proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record). The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. See Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250

F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985).  Thus, the court finds the ALJ posed a proper hypothetical to the VE.

The VE testified that the person described in the hypothetical, with the RFC assigned to Plaintiff by the ALJ, could not perform her past relevant work but that there was work, in the national economy, existing in significant numbers, which the hypothetical person could perform. This testimony provides substantial evidence to support the ALJ's ultimate determination that Plaintiff was not disabled.  See Martise, 641 F.3d at 927) ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (VE's testimony is substantial evidence when it is based on accurately phrased hypothetical capturing concrete consequences of claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

Although Plaintiff argues the ALJ should have relied on the VE's testimony that there would be no work which a person who was chronically late could perform, the ALJ did not include such a limitation in Plaintiff's RFC.  Thus, the ALJ was not required to rely on the VE's response to this alternative hypothetical.  See Haggard, 175 F.3d at 595.  The court finds, therefore, that Plaintiff's argument is without merit.  In conclusion, the court finds that the ALJ's determination that there was work which Plaintiff could perform and that she was, therefore, not disabled is based on substantial evidence.

**IV.**
**CONCLUSION**

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Acting Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 17.

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.


Dated this 22nd day of July, 2014.


 /s/Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE